**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United States of America, ex rel.
Toni Lee,

Plaintiff,

Civ. No. 02-270 (RHK/SRN)
**MEMORANDUM OPINION AND ORDER**

v.

Fairview Health System,

Defendant.

---

Robert J. Hajek, Warchol Berndt & Hajek, PA, Minneapolis, Minnesota, for Plaintiff.

William R. Stoeri, Ross C. D'Emanuele, and Gina L. Cesaretti, Dorsey & Whitney, LLP, Minneapolis, Minnesota, for Defendant.

---

## Introduction

In this qui tam suit, Plaintiff Toni Lee alleges that Defendant Fairview Health System's ("Fairview") submissions of Medicare and Medicaid claims to the government for reimbursement of physical therapy services performed by athletic trainers constitute false claims in violation of the False Claims Act, 31 U.S.C. § 3729 et seq., ("FCA"). Fairview has moved to dismiss Lee's Complaint. For the reasons set forth below, the Court will grant Fairview's Motion.

## Background

Lee was employed by Fairview as a licensed physical therapist from October 1997 until July 2001. (Compl. ¶¶ 3, 5.) Fairview provides physical therapy services to Medicare and Medicaid patients at, *inter alia*, its Institute of Athletic Medicine and University Therapy Center. (Id. ¶ 4.) Patients needing physical therapy are referred to Fairview for treatment by their treating physicians. (Id. ¶ 7.) During her tenure, Lee alleges that Fairview allowed athletic trainers to perform physical therapy services and then billed Medicare and Medicaid for reimbursement of those services. (Id. ¶¶ 31-33.) She contends that physical therapy services cannot be delegated to athletic trainers under Minnesota law (id. ¶ 32), physical therapy performed contrary to Minnesota law is not subject to reimbursement by Medicare and Medicaid (id. ¶ 33), and, consequently, Fairview violated the FCA by submitting claims for those services to Medicare and Medicaid (id. ¶ 38).[1] Lee filed this qui tam action in January 2002. The United States has declined to intervene. (See Doc. No. 9.)

## Standard of Review

Under Rule 12(b)(6), all factual allegations must be accepted as true and every reasonable inference must be made in favor of the complainant. Fed. R. Civ. P. 12(b)(6); see Midwestern Mach., Inc. v. Northwest Airlines, Inc., 167 F.3d 439, 441 (8th Cir.

[1] Although Lee asserts other claims against Fairview in her Complaint, she does not oppose dismissal of those claims. (Pl.'s Mem. in Opp'n at 1.) Accordingly, those claims will be dismissed with prejudice.

1999); Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994). "[D]ismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and [destined] to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001) (citation omitted). A cause of action "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 740 (8th Cir. 2002) (citations omitted). Said another way, "dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Gebhardt v. ConAgra Foods, Inc., 335 F.3d 824, 829 (8th Cir. 2003) (citation and internal quotations omitted).

**Analysis**

Lee argues that Fairview has made false or fraudulent claims to the government for Medicare and Medicaid reimbursement of physical therapy services in violation of the FCA. The claims were false, in her view, because Fairview demanded payment notwithstanding alleged violations of Minnesota law regulating physical therapy. (Pl.'s Mem. in Opp'n at 6.) Fairview has moved to dismiss Lee's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Fairview contends, *inter alia*, that Lee's claim fails as a matter of law because under the Minnesota Athletic Trainer Act athletic trainers may perform physical therapy

services when supervised by physical therapists. (Def.'s Mem. in Supp. at 11-12; Def.'s Reply Mem. in Supp. at 2-5.) The Court will first discuss the applicable physical therapy statutes and regulations and then turn to Fairview's Motion to Dismiss.

**A. Physical Therapy Regulations**

Medicare "pays for outpatient physical therapy services if they meet the following conditions," including that "[t]hey are furnished . . . [b]y or under the personal supervision of a physical therapist in private practice as described in paragraph (c)." 42 C.F.R. § 410.60(a)(3)(ii). Paragraph (c) provides that

> [i]n order to qualify under Medicare as a supplier of outpatient physical therapy services, each individual physical therapist in private practice must . . . [b]e legally authorized (if applicable, licensed, certified, or registered) to engage in the private practice of physical therapy by the State in which he or she practices, *and practice only within the scope of his or her license, certification, or registration*.

Id. § 410.60(c)(1)(i) (emphasis added).

Minnesota regulates both the practice of physical therapy and athletic training. A "physical therapist" practices "physical therapy." Minn. Stat. § 148.65, subd. 2. "Physical therapy" is "the evaluation or treatment or both of any person by the employment of physical measures and the use of therapeutic exercises and rehabilitative procedures, with or without assistive devices, for the purpose of preventing, correcting, or alleviating a physical or mental disability." Id. § 148.65, subd. 1. Under the Minnesota Board of Physical Therapy's regulations, physical therapists may delegate some "patient

treatment procedures only to a physical therapist assistant[2] who has sufficient didactic and clinical preparation" and delegate "tasks related to preparation of patient and equipment for treatment, housekeeping, transportation, clerical duties, departmental maintenance, and selected treatment procedures" to a physical therapy aide.[3] Minn. R. 5601.1400 (footnotes added).

An "athletic trainer" engages in "athletic training." Minn. Stat. § 148.7802, subd. 6. "Athletic training . . . includes the activities described in paragraphs (a) to (e)." Id. § 148.7806. Paragraph (a) provides that an athletic trainer shall

> (1) prevent, recognize, and evaluate athletic injuries;
> (2) give emergency care and first aid;
> (3) manage and treat athletic injuries; and
> (4) rehabilitate and physically recondition athletic injuries.
>
> The athletic trainer may use modalities such as cold, heat, light, sound, electricity, exercise, and mechanical devices for treatment and rehabilitation of athletic injuries to athletes in the primary employment site.

---

[2] A "physical therapist assistant" is a "skilled technical worker who is a graduate of a physical therapist assistant educational program accredited by the American Physical Therapy Association or a comparable accrediting agency. The physical therapist assistant performs selected physical therapy treatments and related duties as delegated by the physical therapist to assist the physical therapist in patient-, client-, and resident-related activities." Minn. R. 5601.0100, subp. 3.

[3] A "physical therapy aide" is a "supportive worker who has been trained on the job to perform tasks assigned by a supervising licensed physical therapist." Minn. R. 5601.0100, subp. 4.

Id. § 148.7806(a).[4] Paragraph (e) provides that "[i]n a clinical, corporate, and physical therapy setting, when the service provided is, or is represented as being, physical therapy, an athletic trainer may work only under the direct supervision of a physical therapist." Id. § 148.7806(e).

**B. FCA Claim**

Lee contends that Fairview violated the FCA by seeking reimbursement for physical therapy services despite Fairview's "violations of applicable regulatory statutes and rules regarding use of athletic trainers to provide physical therapy services outside of the scope permitted by Minnesota law which regulates physical therapists." (Pl.'s Mem. in Opp'n at 6.) Congress enacted the FCA to protect government funds and property from fraudulent claims. Costner v. URS Consultants, Inc., 153 F.3d. 667, 676 (8th Cir. 1998). "Under the qui tam provisions of the [FCA], private persons acting on behalf of the government may sue those who defraud the government and share in any proceeds ultimately recovered." Id. at 675; see 31 U.S.C. § 3730(b). The FCA imposes liability upon any person who, *inter alia*, "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). "To prove allegations brought under the FCA, then, [plaintiffs] must show that a claim for payment from the government was

---

[4] An "athletic injury" is "an injury sustained by a person as a result of the person's participation in exercises, sports, games, or recreation requiring physical strength, agility, flexibility, range of motion, speed, or stamina." Minn. Stat. § 148.7802, subd 5.

made and that the claim was false or fraudulent." Costner, 153 F.3d at 677 (citation and internal quotations omitted).

Lee asserts an "implied false certification" theory of FCA liability. (See Pl.'s Mem. in Opp'n at 5; Audio Tape: Oral Argument (6/15/04).) "An implied false certification claim is based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." Mikes v. Straus, 274 F.3d 687, 699 (2d Cir. 2001). Although the Eighth Circuit has not addressed this issue, other courts agree that implied false certification is viable only when the underlying Federal statute or regulation provides that compliance is a condition or prerequisite to payment.[5] See id. at 700 ("[I]mplied false certification is appropriately applied only when the underlying statute or regulation upon which the plaintiff relies expressly states the provider must comply in order to be paid."); see also United States ex rel. Willard v. Humana Health Plan of Texas, Inc., 336 F.3d 375, 382 (5th Cir. 2003) (stating that under the "implied certification" theory "the critical point is that an action on which payment was conditioned had not been performed"); United States ex rel. Augustine v. Century Health Servs., Inc., 289 F.3d 409, 415 (6th Cir. 2002) (explaining that FCA liability "can attach if the claimant violates its continuing duty to comply with the regulations on which payment is conditioned"); United States ex

[5] While the scope of the implied false certification theory may be even narrower in the health care context, see Mikes, 274 F.3d at 699-700, the Court need not test the theory's boundaries for the purposes of this Motion.

rel. Siewick v. Jamieson Science and Eng'g, Inc., 214 F.3d 1372, 1376 (D.C. Cir. 2000) ("Courts have been ready to infer certification from silence, but only where certification was a prerequisite to the government action sought." (citations omitted)); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 793 (4th Cir. 1999) ("[The FCA] claim fails on the pleadings because [the plaintiff] has never asserted that such implied certifications were in any way related to, let alone prerequisites for, receiving continued funding.").

Lee asserts that Fairview's "demand for payment constitutes an implicit representation that it complied with the requirement[]" under the Medicare regulations that physical therapists must practice within the scope of their license. (Pl.'s Mem. in Opp'n at 5; see id. at 2 (citing 42 C.F.R. § 416.60(c)(1)(i)).) This representation, in her view, was false. She comes to this conclusion by first asserting that Minnesota's physical therapist statutes and regulations define only three categories of individuals who may perform functions in a physical therapy setting—physical therapists, physical therapy assistants, and physical therapy aides. (Id. at 2-3.) Athletic trainers, she continues, are not physical therapists or physical therapist assistants because athletic trainers do not have the required training or accreditation. (Id. at 4.) Therefore, athletic trainers "must function as physical therapy aides in a physical therapy setting." (Id.) But because physical therapy aides can only do certain limited "tasks," Fairview's physical therapists practiced outside the scope of their licence by delegating physical therapy services to athletic trainers. (Id. at 4-5.)

**C. Application of the "Implied False Certification" Theory to Lee's FCA Claim**

Assuming that the Eighth Circuit would recognize the "implied false certification" theory of FCA liability, and also assuming that the Medicare regulations condition payment upon Fairview's physical therapists practicing within the scope of their licenses (as delineated by Minnesota law), Lee's action nonetheless fails for three reasons.

First, Lee's argument that only physical therapists, physical therapist assistants, and physical therapy aides may perform functions in a physical therapy setting is incorrect. In defining the activities of athletic training, the Minnesota Athletic Trainers Act provides that "[i]n a clinical, corporate, and physical therapy setting, when the service provided is, or is represented as being, physical therapy, an athletic trainer may work only under the direct supervision of a physical therapist." Minn. Stat. § 148.7806(e). The clear legislative intent expressed by this provision is that athletic trainers may provide physical therapy services when working under the direct supervision of a physical therapist. See Haug v. Bank of America, N.A., 317 F.3d 832, 835 (8th Cir. 2003) ("Where the language of a statute is unambiguous, the statute should be enforced as written unless there is clear legislative intent to the contrary. . . . If the intent of the statute is clear, the judicial inquiry ends." (citations and internal quotations omitted)). Because the legislature obviously intended athletic trainers to play a role in physical therapy, Lee's reading of the law would render § 148.7806(e) void. See United States v. Campos-Serrano, 404 U.S. 293, 301 n.14 (1971) ("[A] statute ought, upon the whole, to

be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (citation and internal quotations omitted)).

Second, Lee's argument that athletic trainers must function as physical therapy aides is incorrect. It is clear that Minnesota's lawmakers did not intend for such a result. For example, the level of supervision imposed upon athletic trainers is markedly different from that imposed upon physical therapy aides. When the service provided is physical therapy, an athletic trainer works "under the direct supervision of a physical therapist." Minn. Stat. § 148.7806(a). But when a physical therapist aide performs his tasks, he works "under the direct supervision of a licensed physical therapist *who is readily available for advice, instruction, or immediate assistance*" and the physical therapist "must observe the patient's status before and after the treatment [is] administered." Minn. R. 5601.1400 (emphasis added). In addition, athletic trainers have more training and education than physical therapy aides. To become a registered athletic trainer, one must complete an approved education program,[6] have a baccalaureate degree from an accredited college or university, and earn a qualifying score on a credentialing

[6] An "approved education program" is "a university, college, or other post-secondary education program of athletic training that, at the time the student completes the program, is approved or accredited by the National Athletic Trainers Association Professional Education Committee, the National Athletic Trainers Association Board of Certification, or the Joint Review Committee on Educational Programs in Athletic Training in collaboration with the American Academy of Family Physicians, the American Academy of Pediatrics, the American Medical Association, and the National Athletic Trainers Association." Minn. Stat. § 148.7802, subd. 3.

examination.[7] Minn. Stat. § 148.7808, subd. 1(2), (4), and (9). In contrast, to become a physical therapy aide, one must only be "trained on the job to perform tasks assigned by a supervising licensed physical therapist." Minn. R. 5601.0100, subp. 4. As Fairview notes, in light of these differences it is illogical to suggest that the legislature separately enacted § 148.7806(e) to grant registered athletic trainers the authority to perform tasks that anyone trained on the job is authorized to do as a physical therapy aide. Such a reading would render § 148.7806(e) superfluous. See Campos-Serrano, 404 U.S. at 301 n.14.

Finally, Lee's argument, made by her counsel at oral argument, that the word "work," as used in § 148.7806(e), means treating athletic injuries and not physical therapy is also incorrect. (Audio Tape: Oral Argument (6/15/04).) Under Lee's construction, the statute would read: "In a clinical, corporate, and physical therapy setting, when the service provided is, or is represented as being, physical therapy, an athletic trainer may *treat athletic injuries* only under the direct supervision of a physical therapist." If the legislature intended athletic trainers to only treat athletic injuries in a physical therapy setting, however, it would have said so. It certainly knew how to say this, see Minn. Stat. § 148.7806(a)(3) ("An athletic trainer shall . . . manage and *treat athletic injuries*." (emphasis added)), but it chose not to in this context. Moreover, if athletic trainers only

[7] A "credentialing examination" is "an examination administered by the National Athletic Trainers Association Board of Certification for credentialing as an athletic trainer, or an examination for credentialing offered by a national testing service that is approved by the board." Minn. Stat. § 148.7802, subd. 9.

treat athletic injuries in a physical therapy setting, it is hard to see why physical therapists would need to supervise them, given that athletic trainers ordinarily treat athletic injuries without supervision. See id. § 148.7806(a). Instead, the more sensible reading of this provision is that physical therapists need to supervise athletic trainers in a physical therapy setting because the legislature intended athletic trainers to perform *physical therapy*.[8]

In sum, the Minnesota legislature intended that athletic trainers could provide physical therapy services when working under the direct supervision of a physical therapist and did not intend for athletic trainers to function only as physical therapy aides. Because Lee does not assert in her Complaint that Fairview's athletic trainers were not under the direct supervision of a physical therapist—in fact, at oral argument Lee's counsel conceded that "whether there is a lack of supervision or a non-lack of supervision . . . is irrelevant" (Audio Tape: Oral Argument (6/15/04))—she fails to allege that the physical therapists were practicing outside the scope of their license. As such, her "implied false certification" FCA claim fails. Accordingly, the Court will grant Fairview's Motion to Dismiss.[9]

---

[8] Although Lee has cited Minnesota Board of Physical Therapy and Minnesota Board of Medical Practice decisions disciplining physical therapists who had inappropriately delegated physical therapy duties to physical therapist assistants and physical therapy aides (see Hajek Aff. Exs. 1-3), no decision disciplined a physical therapist for delegating physical therapy duties to an athletic trainer.

[9] Lee's request to amend her pleadings (see Pl.'s Mem. in Opp'n at 8) will be denied as futile. MM&S Fin., Inc. v. National Ass'n of Sec. Dealers, Inc., 364 F.3d 908,

**D. Fairview's Request for Attorneys' Fees, Costs, and Disbursements**

Fairview has requested attorneys' fees, costs, and disbursements pursuant to 31 U.S.C. § 3730(g). (Def.'s Mem. in Supp. at 25; Def.'s Reply Mem. in Supp. at 10.) Although Fairview has not filed a Motion, see Fed. R. Civ. P. 7(b)(1), the Court will address its request in the interest of judicial economy.

Section 3730(g) provides that "[i]n civil actions brought under this section by the United States, the provisions of section 2412(d) of title 28 shall apply." 31 U.S.C. § 3730(g). Section 2412(d) of Title 28 provides that

> a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The "'United States' includes any agency and any official of the United States acting in his or her official capacity." Id. § 2412(d)(2)(C). A "party" means

> any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 . . . may be a party regardless of the net worth of such organization.

---

910 (8th Cir. 2004) ("When amending a pleading would be futile, a court will not grant leave to amend."). No set of facts can rehabilitate Lee's fatally flawed interpretation of Minnesota law.

Id. § 2412(d)(2)(B)(ii).

The Court will not award attorneys' fees, costs, or disbursements to Fairview. This action was not brought by the United States; rather, it is a qui tam suit brought by Lee, a private plaintiff, and the United States has declined to intervene.[10] Moreover, Fairview has presented no evidence demonstrating that it is a "party," as that term is defined, entitled to fees and costs.

**Conclusion**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that Defendant Fairview Health System's Motion to Dismiss (Doc. No. 22) is **GRANTED**. Plaintiff Toni Lee's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

---

[10] The appropriate provision for Fairview's request is § 3730(d)(4), which provides:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4). But even if Fairview had utilized this provision, the Court would not award it fees and expenses because Lee's claim was not "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." Id.

Dated: July 22, 2004

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge